Murray GINTIS, Victoria Gintis, and Claudia Martin, Individually and as Representatives of a Proposed Class, Plaintiffs,

v.

BOUCHARD TRANSPORTATION COMPANY, INC., Tug Evening Tide Corporation, and B. No. 120 Corporation, Defendants.

Civil Action No. 06–10747–JLT.

United States District Court, D. Massachusetts.

Jan. 15, 2009.

Jason B. Adkins, John P. Zavez, Noah N. Rosmarin, Adkins, Kelston and Zavez, P.C., Boston, MA, for Plaintiffs.

Christopher L. Demayo, Robert G. Goulet, Jr., David G. Hetzel, Robert M. Shaw, Dewey & Leboeuf LLP, Boston, MA, Dennis F. Kerrigan, Jr., North Barrington, IL, Ronald W. Zdrojeski, Robinson & Cole, Hartford, CT, for Defendants.

## MEMORANDUM

TAURO, District Judge.

### I. *Introduction*

Plaintiffs Murray and Victoria Gintis and Claudia Martin bring this diversity action against Defendants Bouchard Transportation Company, Inc. ("Bouchard"), Tug Evening Tide Corporation ("Tug Evening Tide"), and B. No. 120 Corporation ("B. No. 120") seeking damages resulting from an April 27, 2003 oil spill in Buzzards Bay, off the coast of southeastern Massachusetts. Plaintiffs assert state and common law claims for (1) violation of chapter 21E of the Massachusetts General Laws; (2) negligence in violation of chapter 91, section 59A of the Massachusetts General Laws; and (3) public nuisance. Presently at issue is Plaintiffs' *Motion for Class Certification.* For the following reasons, Plaintiffs' Motion is DENIED.

### II. *Background* [1]

Plaintiffs are owners of residential property in Fairhaven, Massachusetts. The Gintises' property and Ms. Martin's property both include a property interest in a

---

**1.** Plaintiffs set forth the following facts in their Complaint.

beach on Buzzards Bay. Defendant Bouchard wholly controls and directs Defendants Tug Evening Tide and B. No. 120. During all relevant time periods, Defendant Tug Evening Tide owned and operated the tugboat Evening Tide ("the tugboat"), and Defendant B. No. 120 owned and operated the fuel barge Bouchard No. 120 ("the barge").

On April 27, 2003, the tugboat was towing the unmanned barge into Buzzards Bay en route to Sandwich Massachusetts. At the time, the barge was carrying approximately 99,000 barrels of fuel oil. The tugboat and barge eventually entered the Buzzards Bay shipping canal, which was marked by green navigational buoys to the west and red navigational buoys to the east. While traveling through the shipping canal, the tugboat and barge strayed off-course, causing the barge to strike a reef to the west of a green navigational buoy. As a result, up to 98,000 gallons of oil spilled from the barge. The oil spill contaminated approximately ninety miles of tidal flats, beaches, and marshes along both sides of Buzzards Bay, including Plaintiffs' properties.

Plaintiffs, individually and as representatives of a proposed class, brought this action on April 26, 2006. On June 1, 2007, Plaintiffs filed a *Motion for Class Certification*. Parties have fully briefed the issue, and this court held a Hearing on the Motion on January 7, 2009.

## III. *Discussion*

### A. *Collateral Estoppel*

In the Massachusetts Superior Court, plaintiffs from the town of Mattapoisett,

Massachusetts brought a proposed class action against the same defendants for injuries stemming from the same oil spill. On March 2, 2006, the Superior Court ruled on the plaintiffs' motion for class certification, deciding to certify a class limited to persons who had an interest in real property located in Mattapoisett.[2] Now, both sets of Parties in this case assert that the Superior Court's decision and rulings therein are entitled to res judicata effect.

### 1. *Legal Standard for Collateral Estoppel*

"Res judicata" is a generic term that includes both "claim preclusion" and "issue preclusion."[3] Claim preclusion, which is also referred to as "merger" or "bar," prohibits the continuation of an action that is based on the same claim that was the subject of an earlier action.[4] Issue preclusion, which is also known as "collateral estoppel," prevents relitigation of an issue that was already determined in a prior action.[5] At issue in this case is collateral estoppel.

The doctrine of collateral estoppel requires that: (1) the issue of fact or law was "actually litigated and determined by a valid and final judgment"; (2) the issue in the prior litigation was "essential" to the earlier judgment; and (3) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior litigation.[6]

### 2. *The DeLeo Litigation*

Defendants argue that the Superior Court's decision to limit the *DeLeo* class to

**2.** *DeLeo v. Bouchard Transp. Co.*, No.2004-1166B, at 4 (Mass.Super. Ct., Plymouth County Mar. 2, 2006).

**3.** 17 Mass. Prac. *Prima Facie Case* § 2.72 (5th ed. 2008).

**4.** *Id.*

**5.** *Id.*

**6.** *Pierce v. Morrison Mahoney LLP*, 452 Mass. 718, 897 N.E.2d 562, 572 (2008).

owners of residential property in Mattapoisett precludes Plaintiffs from seeking certification of a baywide class in this case. Defendants assert that Plaintiffs' status as "proposed class members" in the state litigation was sufficient to qualify them as "parties" to the prior litigation for collateral estoppel purposes. In support of their argument, Defendants cite *In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation,* which held that a decision with respect to a class, such as a class certification ruling, could be conclusive against absent proposed class members.[7] But *In re Bridgestone/Firestone* stated further that collateral estoppel could only apply "if the absent members were adequately represented by the named litigants and class counsel."[8] Because the *DeLeo* court "had made a preliminary determination that the [Mattapoisett] plaintiffs could not adequately represent the interests of such a diverse[, baywide] class,"[9] this court finds that the named Plaintiffs in this action were not adequately represented in the *DeLeo* litigation. Accordingly, the *DeLeo* court's decision to limit the *DeLeo* class to owners of residential property in a single town does not preclude Plaintiffs from seeking to certify a baywide class in this case.

■ Plaintiffs argue that the *DeLeo* court's rulings on the individual class certification requirements, some of which the court made against Defendants, are entitled to collateral estoppel effect in this case. Such an application of res judicata is termed "nonmutual offensive collateral estoppel": "nonmutual" because the named Plaintiffs in this case were merely proposed class members in the *DeLeo* litigation, and "offensive" because collateral estoppel is asserted against Defendants. The general rule in Massachusetts is that, "absent mutuality of estoppel and technical privity, [a] court would rarely allow collateral estoppel to be applied to a prior judgment offensively."[10] To apply offensive collateral estoppel, a court must determine "whether the issue on which preclusion is sought has been the product of full litigation and careful decision" and whether the defendant "had a full and fair opportunity to litigate the issue in the first action."[11] The U.S. Supreme Court has provided that the "general rule should be that in cases where a plaintiff could easily have joined an earlier action or where ... the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel."[12] The most "decisive consideration in determining whether to apply offensive issue preclusion" is "fairness."[13]

■ Here, Plaintiffs have not shown that they could have easily joined the earlier action. In fact, Plaintiffs imply the opposite in their own counterargument to issue preclusion, by contending partly that they did not have adequate representation in the *DeLeo* litigation. In addition, offensive collateral estoppel would be unfair to

7. *See* 333 F.3d 763, 768 (7th Cir.2003).

8. *Id.*

9. *DeLeo,* No.2004–1166B, at 4.

10. *Whitehall Co. v. Barletta,* 404 Mass. 497, 536 N.E.2d 333, 336 (1989).

11. *Pierce,* 897 N.E.2d at 572 (internal quotations and citations omitted).

12. *Allen v. McCurry,* 449 U.S. 90, 94–95, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

13. *Pierce,* 897 N.E.2d at 572 (internal quotations and citations omitted) (affording the trial judge " 'wide discretion in determining whether' applying offensive collateral estoppel 'would be fair to the defendant' " (quoting *Bar Counsel v. Bd. of Bar Overseers,* 420 Mass. 6, 647 N.E.2d 1182, 1185 (1995))).

Defendants. Before addressing the class certification requirements, the *DeLeo* court had made a preliminary decision to limit the class to residents of Mattapoisett. This meant that when the Superior Court made its subsequent class certification rulings, it did so with respect to a class definition limited to residents of one town. The class definition in question in this case is still a baywide class. Because this court is examining a proposed class defined categorically differently than the proposed class the *DeLeo* court addressed when making its class certification rulings, the class certification issues that this court now considers are not identical to those that the *DeLeo* court considered. Accordingly, the *DeLeo* court's class certification rulings are not entitled to preclusive effect against Defendants.

### B. *Class Certification*

As to the merits of Plaintiffs' Motion, Plaintiffs ask this court to certify a proposed class of more than 1,000 members.[14] Plaintiffs' modified definition of the proposed class is as follows:

> Except for *DeLeo* class members, Defendants and court personnel, anyone with a private real property interest in a segment of the Massachusetts Buzzards Bay shoreline (or any portion thereof) shown as having been oiled from the date of the Oil Spill until that segment received a Response Action Outcome ("RAO") certifying that there was a con-

dition of "No Significant Risk" of harm due to the Oil Spill.[15]

### 1. *Legal Standard for Class Certification*

To certify a class, a plaintiff must show that the class is capable of ascertainment and satisfy the requirements of Rule 23(a) and Rule 23(b). The plaintiff bears the burden of proving each of the requirements for class certification.[16] The law leaves class certification rulings to the district judge's discretion.[17]

First, the proposed class must be capable of ascertainment. If "class members [are] impossible to identify prior to individualized fact-finding and litigation, the class fails to satisfy one of the basic requirements for a class action under Rule 23 of the Federal Rules of Civil Procedure." [18]

Second, Rule 23(a) mandates that a court find that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.[19]

Third, a plaintiff seeking class certification must also satisfy one of the Rule 23(b) factors. The relevant factor in this case,

---

14. Compl. ¶ 23.

15. Pls.' Mem. Reply Supp. Mot. Class Certification 11 (modifying the definition of the proposed class from anyone "having a property interest in property that has been injured" to "anyone with a private real property interest . . . shown as having been oiled").

16. *Makuc v. Am. Honda Motor Co.*, 835 F.2d 389, 394 (1st Cir.1987).

17. *See In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 17 (1st Cir. 2008).

18. *Crosby v. Soc. Sec. Admin. of the U.S.*, 796 F.2d 576, 580 (1st Cir.1986) (citations omitted).

19. Fed.R.Civ.P. 23(a).

Rule 23(b)(3), requires a court to determine that (1) "the questions of law and fact common to the case predominate over questions affecting only individual members" and (2) "that a class action is superior to other available methods for the efficient adjudication of the controversy." [20]

### 2. Plaintiffs' Motion for Class Certification

Though Parties contest each of the class certification requirements, the heart of the dispute resides in the Rule 23(b)(3) predominance and superiority requirements. Given that a failure to satisfy any one of the class certification requirements—including the two Rule 23(b)(3) requirements—is sufficient to defeat Plaintiff's Motion, this court focuses on the central issues in dispute: predominance and superiority.

Plaintiffs contend that common issues of law and fact predominate in this action because the same Defendants caused the proposed class to suffer injury in the same way: property damage as a result of the oil spill. Plaintiffs argue that because the proposed class experienced the same type of injury—oiling of property—which stemmed from the same, singular event—the oil spill—the liability issues are common to the class. Plaintiffs acknowledge that the extent of contamination and property devaluation of the individual properties may differ, but they attest that "there are adequate grounds for certifying the Class with respect to at least liability and

causation, and then calculating damages on an individual basis if necessary." [21]

Defendants respond that common issues of law and fact do not predominate over individual issues for any possible phase—liability, causation, or damages. As to liability, Defendants have admitted responsibility for the underlying oil spill, but have not conceded liability for the injuries of individual Plaintiffs. As to causation, Defendants argue that, at least with respect to Plaintiffs' public nuisance claim, Plaintiffs must prove unreasonable interference and special injury. As to damages, Defendants contend that any examination into the extent of injury would result in various individualized inquiries.

Instructive in this case is Judge Ponsor's opinion in *Church v. General Electric Co.*[22] In *Church*, the plaintiffs had sued General Electric Co. ("GE") for damages resulting from the discharge of waste oil containing polychlorinated biphenyls ("PCBs") from GE's Pittsfield, Massachusetts plant into the surrounding land and Housatonic River.[23] After allowing summary judgment on all but the nuisance and trespass claims, Judge Ponsor addressed the plaintiffs' motion for class certification.[24] The plaintiffs had asked the court to try liability as a class action and to leave damages for individual assessment.[25] Judge Ponsor declined to certify the class at all, reasoning that "[t]o judge whether there has been a harmful enough invasion by PCBs for liability to attach under *nuisance* and trespass, an expert must necessarily measure the extent of the contami-

---

**20.** *Id.* 23(b)(3).

**21.** Pls.' Mem. Reply Supp. Mot. Class Certification 22 (citing *Slaven v. BP Am., Inc.,* 190 F.R.D. 649, 657 (C.D.Cal.2000) (bifurcating an oil spill case into a class-certified liability phase and a noncertified causation and damages phase)).

**22.** 138 F.Supp.2d 169 (D.Mass.2001).

**23.** *Id.* at 171–73.

**24.** *See id.* at 171.

**25.** *Id.* at 181.

nation of the individual properties and their potential exposure to future contamination." [26]

As in *Church,* an adjudication of damages in this case would require various individualized inquiries. To prove damages in the form of property devaluation, the proposed class members would have to establish the degree to which their properties were contaminated, the duration of the contamination, and property features such as size, condition, amenities, and quality of beach access. Moreover, a determination of damages would require an inquiry into the types of the proposed class members' property interests, including whether the proposed class members owned the property for commercial or residential purposes.

This court also finds that, at least with respect to the public nuisance claim, an adjudication of liability and causation would require individualized inquiries similar to those necessary to prove damages. To establish liability and causation on the public nuisance claim, the proposed class members would have to show that there has been an "unreasonable interference with a right common to the general public" and some "special injury of a direct and substantial character." [27] A showing of "unreasonable" interference and "special," "direct," and "substantial" injury would require an examination into the individual characteristics of the proposed class members' properties and the extent of contamination. Because common issues of law and fact do not predominate, Plaintiffs have not demonstrated the superiority of the class form. Accordingly, Plaintiffs have failed to satisfy Rule 23(b).

**26.** *Id.* at 182 (emphasis added).

IV. *Conclusion*

For the foregoing reasons, Plaintiffs' *Motion for Class Certification* is DENIED. AN ORDER HAS ISSUED.

**27.** *Lewis v. Gen. Elec. Co.,* 37 F.Supp.2d 55, 60–61 (D.Mass.1999).